IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 26, 2018 at Knoxville

**DEVON BROWN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-02623     Lee V. Coffee, Judge**

_____

**No. W2017-02187-CCA-R3-PC**

_____

The petitioner, Devon Brown, appeals the denial of his petition for post-conviction relief, which petition challenged his 2012 convictions of first degree murder, attempted first degree murder, aggravated assault, employing a firearm during the commission of a dangerous felony, and reckless endangerment, alleging that he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Ernest J. Beasley, Memphis, Tennessee, for the appellant, Devon Brown.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 2012, a Shelby County Criminal Court jury convicted the petitioner of one count of first degree murder, 13 counts of attempted first degree murder, 13 counts of aggravated assault, one count of facilitation of employing a firearm during the commission of a dangerous felony, and one count of reckless endangerment.  The trial court imposed an effective sentence of life plus 244 years' incarceration to be served consecutively.  On appeal, this court affirmed the convictions and sentences, and our supreme court denied the petitioner's application for permission to appeal.  *State v. Devon Brown*, No. W2013-00182-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Sept. 5, 2014), *perm. app. denied* (Tenn. Jan. 15, 2015).

This case arose from an incident on July 3, 2010, during which "the victim, Kimberly Jamerson, was murdered by [the petitioner], Kenneth Brown, and David Richardson at her aunt's house located at 2706 Northmeade Avenue in Memphis." *Id.*, slip op. at 5. A dispute arose over marijuana, *id.*, after which the defendant and his co-defendants "joined together to retaliate against the victims for the earlier fight by arming themselves with weapons and returning to the Williams' residence, . . . firing numerous shots at the individuals at the residence," *id.*, slip op. at 22-23. This court summarized the proof at trial as follows:

> [The petitioner] and Co-defendants Kenneth Brown and David Richardson were involved in an altercation with several individuals at Felix Williams' home located at 2706 Northmeade Avenue, including Robrecus Braxton, Christopher Braxton, and Kenneth Baker. After the fight was over, Mr. Brown indicated that they would be back. . . . [The petitioner], Mr. Brown, and Mr. Richardson returned in the green Lumina three to four hours after the fight ended armed with a shotgun, an assault rifle, and a pistol. They parked down the Street from the Williams' residence on Helmwood Street and released a barrage of gunfire on a group of individuals at the Williams' home in retaliation for the fight killing the unarmed victim who was walking to her vehicle. It was later determined that she died from a gunshot wound to the head. Lamarcus Moore was struck by a bullet in the leg and had to be taken to the hospital, and there were women and several children inside the house when the shooting occurred. Bullet holes were later discovered in the house. [The petitioner] was interviewed by police and admitted that he was armed with a black shotgun at the time of the shooting and that he fired three shots. He said that Mr. Brown was armed with a revolver and Mr. Richardson was armed with an assault rifle. [The petitioner] admitted that there "was like thirty people standing out" as they drove past the residence.

*Id.*, slip op. at 22.

The petitioner filed a timely pro se petition for post-conviction relief on November 2, 2015, raising eight claims of ineffective assistance of counsel: (1) trial counsel "failed to object to a prejudicial example that was presented to potential jurors

during voir dire"; (2) trial counsel "failed to seek a plea agreement"; (3) trial counsel failed to move "to suppress prejudicial autopsy photographs"; (4) trial counsel "failed to adequately question the State's witnesses during cross-examination"; (5) trial counsel "failed to object to the introduction of the prejudicial photo-spreads"; (6) trial counsel failed "to argue any mitigating evidence . . . during the sentencing hearing"; (7) appellate counsel failed "to argue . . . that the Court did not properly apply the *Wilkerson* Factors during sentencing"; and (8) "[t]he cumulative effect of trial counsel's errors worked together to deprive the [p]etitioner of his Sixth Amendment right to the effective assistance of counsel." After the appointment of counsel, the petitioner filed an amended petition for post-conviction relief, which petition "incorporated, re-asserted, and maintained" all claims previously asserted in his pro se petition.

At the evidentiary hearing, the court permitted the petitioner to amend his petition verbally to include an additional claim that trial counsel was ineffective for failure to find two specific witnesses.

Trial counsel testified that she repeatedly asked the State for a plea agreement, but "they didn't make any offers" because "they did not feel as if they needed a co-defendant to become a State witness" since each co-defendant had given a statement to the police. Counsel attempted to suppress the petitioner's statement on the grounds that he made the statement while illegally detained and after a warrantless arrest unsupported by probable cause, but the court denied the motion. Counsel testified that she prepared for trial "in anticipation of the statement not being suppressed." Counsel remained in contact with the petitioner during the pendency of his case; she visited him in jail, sent him letters, and "had conversations with his mother over the phone." Trial counsel reviewed all discovery with the petitioner.

Trial counsel testified that the petitioner gave her the names of only three potential witnesses: Vera Townsend, Cynthia Brown, and Jennifer Cooper. Counsel testified that "if there were any objectionable" autopsy photographs, she would have "had a hearing on it." She said that, at trial, "there were contradictions" in the testimony of the State's witnesses. Counsel testified that she did not present mitigating evidence at the sentencing hearing other than the fact that the petitioner "was actually diversion eligible before all this happened" because his first degree murder conviction required a "mandatory sentence of life."

On cross-examination by the State, trial counsel testified that she "sent [the petitioner] a copy of the discovery[] before August of 2011." The petitioner's case was scheduled "at least once every month" leading up to trial, and counsel met with the petitioner "[e]very time he was in court." The State offered two letters into evidence.

-3-

The first letter, dated September 6, 2011, was from trial counsel to the petitioner and "explained classifications of felonies, the range of punishments for each of the charges he had been charged with, the amount of time, as far as it was a [100 percent] charge, and that the Judge can always sentence him consecutively." The second letter, dated October 27, 2011, was also from trial counsel to the petitioner and explained that trial counsel "was still trying to get an offer from the prosecutor." Trial counsel testified that she sent an email to the State outlining "a couple of different options as far as possible pleas." The State responded that "the weapon charge . . . can't be dismissed." Counsel continued to seek a plea offer from the State from the outset of the case until trial.

Regarding the autopsy photographs, trial counsel explained that it "would be unusual" for the State to attempt to admit "any that were outside the boundaries of what's allowed." She continued that, had the State attempted to do so, she "would have had an out-of-jury hearing on that." Counsel testified that she investigated everything that the petitioner brought up during preparation for trial. She and her investigator "went to the crime scene[,] . . . stood where the crime scene sketch said there were spent shell casings, and . . . just tried to see as far as whether or not what the State's witnesses, from their statements, were saying would be accurate." Counsel conceded that she could have done "perhaps a better job to not have the consecutive sentencing." Counsel said that any mitigating evidence she could have presented during sentencing was presented at trial and the court was aware of those circumstances at the time of sentencing.

Upon examination by the court, trial counsel testified that she did not recall the petitioner's presenting her with any potential witnesses to whom she did not talk.

The court described the eight autopsy photographs and physical exhibits admitted at trial. The first photograph identified the victim. The second and third photographs were of the victim and showed "a facial profile" and "a left facial profile" respectively. The fourth photograph "showed some abrasions that Ms. Jamerson had suffered after a bullet tore through her head, and she had fallen to the pavement." The fifth photograph showed "an exit or an entry wound." The sixth photograph was a radiograph "of the inside of the victim's head where a bullet fragment had lodged in her head." The seventh photograph was of "the bullet fragment that had been removed from the victim's head." The final exhibit was "the actual bullet fragments." The court noted that "on a homicide case, that's a very low number of exhibits that were, in fact, admitted during the course of this trial."

The petitioner testified that trial counsel met with him "quite a few times" leading up to his trial. Counsel gave him discovery materials after "two to three months." The petitioner stated that trial counsel did not explain how his charges went from "a

-4-

criminal attempt first-degree murder to a first-degree murder." He also stated that counsel did not explain her trial strategy to him. Counsel advised the petitioner "that it probably wouldn't be best if [he] testified." Counsel told the petitioner that "she was going to try to get [his statement] . . . suppressed." The petitioner testified that he did not inform trial counsel of additional witnesses "[a]t the time" because he "didn't know about any witnesses that [he] had" but that trial counsel nevertheless should have found these additional witnesses. The petitioner became aware of the potential additional witnesses "after [he] got sentenced . . . and got to reviewing everything [himself]."

The petitioner testified that his only prior experience with the criminal justice system was with misdemeanors and that this was the most serious charge he had ever faced. He testified that "it was a very overwhelming experience" and that he did not fully understand the nature of this case. He said that, although he "made it to the twelfth [grade]," he lacked any education "with criminal law" and was confused by the process. The petitioner asserted that he would have obtained a different outcome at trial had he had a different attorney. The petitioner added that trial counsel could have provided better representation by objecting to a photographic lineup because "[i]nstead of [the jury] having a photo identification of [the petitioner], it was a photo identification of [his] brother, and . . . that caused confusion and [was] misleading to the jury."

Upon questioning by the court, the petitioner testified that he would have had a better outcome at trial with a different attorney because "they would have looked more into and probably would have represented me more." The petitioner stated that trial counsel could have conducted a "[b]etter investigation" and "better cross-examination." The petitioner said that trial counsel could have investigated whether any witness could "ever point me out or identify me." The petitioner stated that he remembered Rodrecus Braxton[1] and Felix Williams identifying him at trial as having participated in the shooting. The petitioner disagreed with trial counsel that his statement was the only evidence connecting him to the crime. The petitioner stated that the two additional witnesses that trial counsel did not locate prior to trial were not present at the evidentiary hearing.

In the written order denying relief, the post-conviction court accredited trial counsel's testimony and did "not accept as credible the testimony of the petitioner."[2]

---

[1]    Mr. Braxton's first name is spelled "Rodrecus" in the transcript of evidence but is spelled "Robrecus" in the trial court's order.

[2]    In addition to its conclusions regarding the merits of the petitioner's claims, the post-conviction court also indicated that "all these issues have been waived or previously determined conclusively against the petitioner." The court also indicated that it was "precluded from analyzing this issue under the plain

Regarding the petitioner's claim that trial counsel failed to locate two additional witnesses for trial, the court stated that, because the petitioner failed to produce these witnesses at the evidentiary hearing, the petitioner's claim was without merit. The court rejected the petitioner's claim that trial counsel failed to seek a plea agreement and instead found that trial counsel "asked repeatedly for offers from the State," but "the State refused to make an offer on this case." The court found that counsel "had no legal basis to object to the photographs that were admitted during trial." The court also found that the petitioner failed to establish "exactly what prejudicial examples . . . trial counsel should have objected to during voir dire." As to the petitioner's claim that trial counsel failed to adequately cross-examine the State's witnesses, the court found that "trial counsel did vigorously cross-examine prosecution witnesses."

The post-conviction court concluded that trial counsel's investigation in this case was not insufficient, noting that trial counsel "met with the [p]etitioner multiple times in court and in custody," "contacted and spoke to witnesses who had been provided by the [p]etitioner," and "visited the crime scene in this case with her investigator." The court further found that trial counsel "argued that the sentences should be aligned concurrently, as the [p]etitioner had no other criminal convictions on his record."

In this timely appeal, the petitioner asserts that the trial court erred by denying post-conviction relief, re-asserting his claim that he was deprived of the effective assistance of counsel at trial. The State argues that the petitioner's argument on appeal is waived because "he has not provided any citation to the record in support of his argument" and because "the grounds raised on appeal . . . were not included in his petition or amended petition" for post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to

error doctrine" and, applying the law-of-the-case doctrine, determined that no exception applied and that "[t]he proof against the [p]etitioner was overwhelming." It is unclear which of the petitioner's claims to which the court was referring. As indicated, the petitioner raised the single issue of ineffective assistance of counsel and alleged myriad instances of what he believed to be counsel's ineffective assistance. Ineffective assistance of counsel claims are properly raised in a petition for post-conviction relief. *See State v. Anderson*, 835 S.W.2d 600, 607 (Tenn. Crim. App. 1992). Accordingly, ineffective assistance of counsel issues raised in the petitioner's post-conviction petition are not waived for failure to raise them on direct appeal.

the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In his brief, the petitioner made only a general claim of ineffective assistance of counsel, and the only claims mentioned with any specificity are that trial counsel "was not properly prepared to go to trial and the lack of preparation was the result of a failure to properly investigate the matter" and that trial counsel "failed to put forward a legitimate defense strategy." Because these claims were not presented in the post-conviction petition, and the petition was not amended at the evidentiary hearing to

-7-

include these issues, these claims are not properly before this court. *See Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (stating that "an issue raised for the first time on appeal is waived").

Waiver notwithstanding, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel's representation was ineffective. The petitioner claims that trial counsel failed to adequately investigate his case and prepare for trial; however, trial counsel's accredited testimony establishes that she prepared for trial anticipating that the petitioner's incriminating statement would be admitted, that she remained in constant contact with the petitioner throughout the pendency of his case, that she reviewed all discovery with the petitioner, that she investigated everything the petitioner asked her to, that she interviewed every witness that the petitioner told her about, and that she visited the crime scene with her investigator to determine "whether or not what the State's witnesses . . . were saying would be accurate." The petitioner failed to present evidence of any potentially beneficial information that counsel might have discovered with further preparation or investigation.

The petitioner also asserts that trial counsel failed to develop a "legitimate defense strategy." Trial counsel's accredited testimony, however, established that her defense strategy was that the petitioner was "the least culpable," "had not been involved in the earlier altercation," and "had just been pulled into it because of his family." Under the circumstances, trial counsel's strategy was reasonable, and this court will not second-guess counsel's decision.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE